UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

OMAR TROCHEZ MEJIA,   )
           )
   Petitioner,    )
           )
- v. -          )   Civil Action No 05-11378-PBS
           )
BRUCE CHADBOURNE,   )
           )
   Respondent.   )
           )

**MEMORANDUM IN RESPONSE TO THIS COURT'S ORDER DIRECTING THE GOVERNMENT PROVIDE A MEMORANDUM OF LAW AS TO JURISDICTION AND THE MERITS**

**Preliminary Statement**

On June 29, 2005, Omar Trochez-Mejia ("Mejia") filed this habeas corpus action in this Court seeking review of his May 9, 2001, final removal order. See Petition, attached hereto as Exhibit 1; and Order of Removal dated May 9, 2001, attached hereto as Exhibit 2.

As grounds for relief, Mejia argues that ineffective assistance of counsel prevented him from making a timely filing of a "special motion to seek 212(c) relief"[1] under 8 C.F.R. §1003.44. See Exhibit 1, ¶13. The ineffective assistance, argues Mejia, deprived

---

[1] The Immigration and Nationality Act of 1952 gave the Attorney General Authority to waive deportation of certain criminal aliens. See Carranza v. INS, 277 F.3d 65, 68 (1st Cir. 2002).

him of an opportunity to argue that these newly adopted regulations, excluding Mejia

from eligibility for such relief, were unconstitutional as applied to him.

As more fully explained herein, whatever the merits of this action, this Court lacks

subject matter jurisdiction (this Court also lacks authority to transfer).  Moreover, Mejia's

claims are meritless as Congress expressly legislated that aliens, such as Mejia, who had

pled guilty after April 26, 1996, would be ineligible for Section 212(c) relief.

## Facts

Mejia is an alien admitted to the United States on or about May 27, 1973.  Exhibit

1, ¶7.  On May 16, 1996, Mejia was charged with two counts of assault and battery and

one count of assault and battery by means of a dangerous weapon, occurring March 27,

1996, April 20, 1996, and May 14, 1996, respectively.  Exhibit 1, ¶9.  Mejia pled guilty

to these offenses on May 29, 1996, and was sentenced to two years in the Massachusetts

House of Corrections, six months to be served, the balance suspended.  Id.

On March 25, 1998, Mejia was served with a Notice to Appear charging Mejia as

being an alien removable for having committed an "aggravated felony."  Exhibit 1, ¶11.

On May 18, 1998, Mejia withdrew his request for withholding of removal and was

ordered removed.[2]  Exhibit 1, ¶11; Exhibit 2.  Mejia appealed his removal to the Board of

---

[2]     Before the 1996 enactment of the Illegal Immigration Reform and
        Immigrant Responsibility Act, aliens ineligible to enter the country were
        denominated 'excludable' and ordered 'deported'  8 U.S.C. §' 1182(a),
        1251(a)(1)(A) (1994 ed.).  Post-IIRIRA, such aliens are said to be
        'inadmissible' and held to be 'removable.'  8 U.S.C. § 1182(a), 1229a(e)(2)
        (2000 ed.).

Clark v. Suarez Martinez, 125 S.Ct. 716,  721 n.2 (2005).

2

Immigration Appeals ("BIA"), and on May 9, 2001, the order of removal was upheld. Exhibit 1, ¶11; Order of the BIA, attached hereto as Exhibit 3.  Mejia did not comply with or otherwise challenge the final order of removal for almost four years.[3]

On April 7, 2005, Mejia allegedly[4] hired counsel to file a motion to reopen under the recently adopted regulation, 8 C.F.R. § 1003.44, implementing the holding of the Supreme Court in INS v. St. Cyr, 533 U.S. 289 (2001).  That regulation provided that certain criminal aliens, eligible for 212(c) relief prior to the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), P.L. 104-208, 110 Stat. 3009, and the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. Law. No. 104-132, 110 Stat. 1214, would be permitted to file motions for such relief on or before April 26, 2005.  Exhibit 1, ¶13; 8 C.F.R. § 1003.44(h).  Mejia alleges that counsel refused to file such a motion, citing counsel's belief that Mejia was ineligible for relief under that regulation, depriving Mejia of "the opportunity to argue to the BIA that the regulations were unconstitutional as applied to him."  Exhibit 1, ¶13.

### Procedural History

The Respondent, Bruce Chadbourne ("Chadbourne"), moved to dismiss the action for lack of subject matter jurisdiction pursuant to the REAL ID Act of 2005[5] ("RIDA")

---

[3]  C.f., Hernandez v. Reno, 238 F.3d 50, 58 (1st Cir. 2001) ("It is hard to stomach the idea that Hernandez could sit on his hands for almost five years and then say that he was unconstitutionally denied an opportunity to pursue an appeal from the denial of waiver.").

[4]  Mejia has not complied with the prima facie requirements of an ineffective assistance claim.  See Matter of Lozada, 19 I & N Dec. 637, 639 (BIA), aff'd 857 F.2d 10 (1st Cir. 1988); and Betouche v. Ashcroft, 357 F.3d 147 (1st Cir. 2004).

amendments to the Immigration and Nationality Act ("INA").  The Respondent also noted that since Mejia's removal hearings were completed before an Immigration Judge in Oakdale, Louisiana, see Exhibits 2 and 3, jurisdiction for any otherwise cognizable action rests, if at all, in the Fifth Circuit Court of Appeals.[6]

This Court transferred the instant action to the First Circuit on August 4, 2005.  On August 8, 2005, the First Circuit remanded the matter, noting that the transfer was inappropriate because the petition was filed after May 11, 2005 (and was therefore untimely under the transfer provision of RIDA), and, to the extent that jurisdiction existed, it existed solely in the Fifth, not First, Circuit Court of Appeals.

Upon remand, this Court directed that the Respondents submit a memorandum of law as to jurisdiction and the merits of Mejia's claims.

## <u>Argument</u>

### I.  SUMMARY OF ARGUMENT

In enacting the RIDA, Congress evinced unequivocal intent that the habeas jurisdiction of the district courts to entertain challenges to the validity of removal orders be repealed and provided jurisdiction for any and all such claims in the courts of appeals.  The instant claim, untimely under both the transfer provision of RIDA and the general transfer statute, must be dismissed.

---

[5]  REAL ID Act of 2005, H.R. 1268, 109th Cong. (2005)(enacted), Pub. L. No. 109-13, Div. B, 119 Stat. 231 ("RIDA").  The RIDA was enacted into law on May 11, 2005.

[6]  See 8 U.S.C. § 1252(b)(2) (prescribing venue in review of a removal order, "[t]he petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings.").

In assigning jurisdiction exclusively to the courts of appeals, Congress has acted within its constitutional power to regulate the jurisdiction of Article III courts and its plenary power over immigration matters.  Further, by expressly providing jurisdiction in the courts of appeals to hear claims of legal and constitutional dimension, Congress has provided an "adequate and effective" substitute for habeas.

Mejia is ineligible for Section 212(c) relief because he pled guilty after the effective date of the AEDPA which provided that "aggravated felons" were ineligible for such relief.  Mejia is an "aggravated felon" under the expanded definition adopted by the IIRIRA which Congress expressly provided was to be applied to convictions entered "on, before or after" the effective date of the IIRIRA, in every removal action instituted after September 30, 1996, "regardless of the date of conviction."  There is no constitutional infirmity in this retroactive application.

Thus, because this Court lacks jurisdiction and Mejia's claims fail on the merits, this claim must be dismissed.

## II.     THIS COURT LACKS SUBJECT MATTER JURISDICTION TO REVIEW MEJIA'S CLAIMS (BUT FOR THE CHALLENGE TO HIS CONTINUED DETENTION) AND LACKS AUTHORITY TO TRANSFER THIS ACTION

### A.     This Court Lacks Subject Matter Jurisdiction Over Challenges To The Validity of Mejia's Order of Removal

On May 11, 2005, the President signed into law the RIDA which, among other things, amends certain provisions of the INA.  Section 106(a) of RIDA makes several significant amendments to the INA's jurisdictional statute at 8 U.S.C. § 1252 (2000), to

clarify that district courts lack jurisdiction, habeas or otherwise, to review the validity of

any removal order for any alien, criminal or non-criminal.  As a result, § 1252,  now

clearly preludes <u>all</u> review in district court including habeas review.[7]

Specifically, Section 106(a)(2) of the RIDA, amends 8 U.S.C. § 1252(b)(9) to

provide:

> CONSOLIDATION OF QUESTIONS FOR JUDICIAL REVIEW-
> Judicial review of all questions of law and fact, including interpretation and
> application of constitutional and statutory provisions, arising from any
> action taken or proceeding brought to remove an alien from the United
> States under this title shall be available only in judicial review of a final
> order under this section.  *Except as otherwise provided in this section, no*
> *court shall have jurisdiction, by habeas corpus under section 2241 of title*
> *28, United States Code, or any other habeas corpus provision, by section*
> *1361 or 1651 of such title, or by any other provision of law (statutory or*
> *nonstatutory), to review such an order or such questions of law or fact.*

<u>Id</u>.  (amendments italicized).

Congress has also amended the judicial review provisions of the INA to explicitly

provide that jurisdiction to review the validity of any and all removal orders lies

exclusively in the United States Circuit Courts of Appeals.  Section 106(a)(1)(B) of the

RIDA creates a new INA section 242(a)(5), 8 U.S.C. § 1252(a)(5):

> (5) EXCLUSIVE MEANS OF REVIEW- Notwithstanding any other
> provision of law (statutory or nonstatutory), including section 2241 of title

---

[7] Habeas challenges to pure detention -- that is, challenges only as to the fact of detention or continuing detention and not vicariously to the lawfulness of a removal order -- are not affected by the RIDA section 106 jurisdictional amendments.  <u>See</u> Conference Report, 151 Cong. Rec. H2813, 2873, 109th Cong., 1st Sess., <u>available at</u> 2005 WL 1025891 (May 3, 2005)("Moreover, section 106 would not preclude habeas review over challenges to detention that are independent of challenges to removal orders.").  Such a claim does not yet exist in this case as Mejia was detained by immigration officials on June 11, 2005.  Under <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001), detention is <u>presumed</u> reasonable for six months.  Any viable challenge to detention would not lie until December 11, 2005.

> 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act, except as provided in subsection (e). For purposes of this Act, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms `judicial review' and `jurisdiction to review' include habeas corpus review pursuant to section 2241 of title 28, United States Code, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

Id. Congress has also repealed the prior limitation on appeals by criminal aliens (such as this Petitioner), such that criminal aliens may now obtain review of constitutional claims and questions of law in the courts of appeals. 8 U.S.C. § 125(a)(2)(D);[8] RIDA Section 106(a)(1)(A)(iii).[9]

These amendments became effective on the date of enactment, May 11, 2005, and "apply to cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of enactment of this division." RIDA, Section 106(b). Accordingly, Section 106(a)'s jurisdictional amendments apply to Mejia's case because he seeks habeas review of his deportation order which was "issued before . . . the date of enactment" of RIDA.

The sum and substance of these amendments is to make explicit that no court other than the court of appeals has any subject matter jurisdiction to review removal orders or

---

[8] Prior to the enactment of the RIDA, criminal aliens were precluded from appealing their removal orders to the courts of appeal. See former 8 U.S.C. § 1252(a)(1)(C).

[9] See also, Conference Report, 151 Cong. Rec. H2813, 2873, 109th Cong., 1st Sess., available at 2005 WL 1025891 (May 3, 2005)("Under the amendments in section 106, all aliens will get review in the same forum -- the courts of appeal.").

"all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States," See INA sections 242(a)(5) and (b)(9), codified at 8 U.S.C. §1252(a)(5) and (b)(9).

The instant action, challenging the validity of Mejia's removal order, indisputably falls within the RIDA.  The right to effective assistance in immigration proceedings arises under the Fifth Amendment to the Constitution.  See, e.g., Hernandez v. Reno, 238 F.3d 50, 55 (1st Cir.2001).  A claim that regulations are "unconstitutional," see Petition, p.1, is by definition a constitutional claim.[10]  As of May 11, 2005, Congress has precluded this Court's jurisdiction to entertain any challenge to a removal order  including constitutional challenges and vested jurisdiction to entertain such claims exclusively in the appropriate court of appeals. See RIDA Section 106(a).

Mejia is not without remedies.  He may file a motion to reopen before the BIA, and seek judicial review of any unfavorable decision by the BIA in the Fifth Circuit Court of Appeals.  That court is the only court with subject matter jurisdiction to review the ineffective assistance claim and Mejia's constitutional challenge to the regulations.  See 8 U.S.C. § 1252(a)(5) and (b)(9) as amended by Section 106(a)(2) of the RIDA.[11]

---

[10]  Although, as noted more fully herein, the challenge is more appropriately construed as one of statutory construction.  See Section IV, infra.

[11]  Mejia's failure to have pursued these available administrative remedies would have precluded this court's habeas jurisdiction even under the pre-RIDA scheme.  See 8 U.S.C. §1252(d); Sayyah v. Farquaharson, 382 F.3d 20 (1st Cir. 2004).

As a consequence, this claim must be dismissed for lack of subject matter jurisdiction.

B.          Transfer of This Action Is Not Authorized by Law

Congress incorporated a transfer provision into the RIDA which allowed for the transfer of habeas corpus actions pending on May 11, 2005.  See RIDA, Section 106(c). This action, filed after May 11, 2005, does not fall within that provision.  See Mejia v. Gonzales, First Circuit Docket #05-2186, Order dated August 8, 2005 (concluding that transfer was inappropriate under Section 106(c) of RIDA as the claim was not pending May 11, 2005). That Mejia may be limited in the relief available to him because his claim was not pending on May 11, 2005, is not grounds to disregard congressional intent. "[F]iling deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept is to have any content, the deadline must be enforced."  United States v. Locke, 471 U.S. 84, 101 (1985).

Similarly, transfer is not appropriate under 28 U.S.C. § 1631, the general transfer statute.  Under 28 U.S.C. §1631, a court may transfer an action to cure the want of jurisdiction where the filing in the wrong court was itself timely.  Mejia's final order of removal was issued May 9, 2001, and he did not file a petition for review within the statutorily required 30 days from that date.  See 8 U.S.C. § 1252(b)(1).  See also, Mejia v. Gonzales, First Circuit Docket #05-2186, Order, dated August 8, 2005.

### III.    THE RIDA DOES NOT VIOLATE THE SUSPENSION CLAUSE

In his habeas petition, Mejia challenges[12] the constitutionality of RIDA under the Suspension Clause. Petition, ¶1. The Suspension Clause, however, does not require district court habeas review of removal orders because Congress has provided a constitutionally "adequate and effective" substitute for habeas corpus review through the "petition for review" mechanism, see Swain v. Pressley, 430 U.S. 372, 381 (1977), which is available to all aliens. See 8 U.S.C. § 1252(a)(2)(D), as amended by RIDA § 106(a) (proving that the courts of appeals may hear claims of legal and constitutional error). By prescribing the review petition procedure instead of general habeas corpus review, Congress has exercised its broad authority to define federal court jurisdiction, see Felker v. Turpin, 518 U.S. 651, 664 (1996), and its plenary power over immigration matters, see Reno v. Flores, 507 U.S. 292, 305-06 (1993), by providing aliens with an alternative remedy that is neither inadequate nor ineffective to challenge the legality of their removal from the United States. Indeed, the Supreme Court itself clearly stated in St. Cyr that "Congress could, without raising any constitutional questions, provide an adequate substitute through the courts of appeals." 533 U.S. at 314 n. 38 (citing Swain, 430 U.S. at 381); see also 151 Cong. Rec. H2813, 2873, 109th Cong., 1st Sess., available at 2005 WL 1025891 (May 3, 2005) ("By placing all review in the courts of appeals, [RIDA] would provide an 'adequate and effective' alternative to habeas corpus.").

---

[12] Absent a reference to the Constitution's Suspension Clause, there is no developed argument whatsoever as to how RIDA is purportedly unconstitutional under that provision.

IV.    **CONGRESS EXPRESSLY PROVIDED THAT AGGRAVATED FELONS, AS DEFINED IN THE IIRIRA, WHO ENTERED PLEAS OF GUILTY AFTER THE ADOPION OF THE AEDPA, WERE RETROACTIVELY INELIGIBLE FOR SECTION 212(c) RELIEF**

A.    <u>Summary of Argument</u>

Mejia is ineligible for relief under former Section 212(c) because he pled guilty in May of 1996, after the April 24, 1996, adoption of Section 440(d) of the AEDPA, and because his crimes are "aggravated felonies" under the retroactive application of the definition adopted by the IIRIRA in September 1996.  As explained below, Congress expressly legislated that the expanded definition of "aggravated felony" in IIRIRA § 321(a) was to be applied to convictions entered "on, before or after" the effective date of the IIRIRA, in every removal action instituted after September 30, 1996, "regardless of the date of conviction."  This Court must implement Congress' unambiguous intent that the definition operate retroactively.  Mejia is thus ineligible for Section 212(c) relief because he is an "aggravated felon."

B.    <u>Background</u>

Prior to April 1996, lawful permanent resident aliens who were deportable because they committed certain criminal offenses could apply for a waiver of deportation, known as a § 212(c) waiver.

> The Immigration and Nationality Act of 1952 . . . gave the Attorney General discretion to permit aliens lawfully admitted for permanent residence to return after a temporary absence.  This seemingly innocuous provision was later interpreted to permit the Attorney General, as a matter of discretion, to waive deportation for removable aliens already within the United States. . . .  Such waivers came to be known as "212(c) waivers" or "212(c) relief."

Carranza v. INS, 277 F.3d 65, 68 (1st Cir. 2002) (citations omitted).  Relevant to the

instant action, the provision allowed the Attorney General to waive deportation for aliens

convicted of certain crimes.  Id.

In 1990, Section 511(a) of Immigration Act ("IMMACT"), amended INA §

212(c), 8 U.S.C. § 1182(c), to prohibit such relief to "aggravated felons" who "ha[d]

served a term of imprisonment of at least 5 years."  IMMACT, Pub.L. No. 101-649, §

511(a), 104 Stat. 4978, 5052 (1990).

In April 1996, Congress more significantly restricted the availability of § 212(c)

relief when it passed the AEDPA. The AEDPA, Section 440(d) precluded Section 212(c)

relief, *inter alia*, for all aliens designated as  "aggravated felons."

See AEDPA § 440(d);[13] see also, e.g., Cordes v. Gonzales, --- F.3d. ---, 2005 WL

1876322 (9th Cir. 2005).

On September 30, 1996, Congress passed the IIRIRA.  Section 304(b) of that

statute repealed Section 212(c) entirely and replaced it with a new procedure called

"cancellation of removal" (now at 8 U.S.C. §1229b) for which "aggravated felons" are

---

[13] Section 440(d) provided:
  (d) CLASSES OF EXCLUDABLE ALIENS.--Section 212(c) of such Act
  (8 U.S.C. 1182(c)) is amended--
   (1) by striking "The first sentence of this" and inserting "This"; and
   (2) by striking "has been convicted of one or more aggravated felonies"
  and all that follows through the end and inserting "is deportable by reason
  of having committed any criminal offense covered in section 241(a)(2)
  (A)(iii) [aggravated felony], (B)[controlled substance], (C) [firearm
  offenses], or (D) [national security or defense crimes], or any offense
  covered by section 241(a)(2)(A)(ii) for which both predicate offenses are
  covered by section 241(a)(2)(A)(i) [crimes of moral turpitude]."

ineligible.  Separately, IIRIRA Section 321(a)(3) reduced the sentencing requirement for

an "aggravated felony" from "at least 5 years" to "at least one year."  Congress further

expressly legislated that the expanded definition of "aggravated felony" applied with

respect to "conviction[s] . . . entered before, on, or after" the enactment of IIRIRA and

was to be applied "to actions [removals] taken on or after the date of the enactment of this

Act, regardless of when the conviction occurred . . ." See IIRIRA § 321(b) and (c).

B. The Supreme Court's Holding In INS v. St. Cyr And Subsequent
   Department of Justice Regulations

In INS v. St. Cyr, 533 U.S. 289 (2001), the Supreme Court found that the repeal of

Section 212(c) relief contained in IIRIRA  §304[14] could not be applied retroactively to

aliens who pled guilty before the adoption of both AEDPA and IIRIRA.  The Supreme

Court did not conclude that Congress lacked the power to effectuate such a change,

simply that Congress had not expressed a clear intent to deprive aliens convicted before

the adoption of both AEDPA and IIRIRA of Section 212(c) relief.  See St. Cyr, 533 U.S.

at 325-326 ("Prior to AEDPA and IIRIRA, aliens like St. Cyr had a significant likelihood

of receiving § 212(c) relief. . . .  We find nothing in IIRIRA unmistakably indicating that

---

[14]  The St. Cyr opinion also addressed whether AEDPA and IIRIRA had repealed habeas
jurisdiction in the district courts.  St. Cyr, 533 U.S. at 298-314.  In addressing this issue,
the Supreme Court concluded that Congress had not expressed its intent to repeal habeas
jurisdiction with adequate clarity and had not provided an adequate alternative forum.  Id.
at 314.  As a consequence, the court concluded that AEDPA and IIRIRA did not operate
to eliminate habeas jurisdiction.  In enacting RIDA, as outlined in Section I, supra,
Congress both expressly stated its intent to repeal habeas jurisdiction and provided for an
alternative forum (the court of appeals) for claims that could have been heard in habeas.

Congress considered the question whether to apply its repeal of § 212(c) retroactively to such aliens.") (emphasis added).  Stated another way, Section 304(b) of IIRIRA, providing for the repeal of Section 212(c), simply lacked any expression of Congressional intent that the repeal be applied retroactively to aliens who had pled guilty prior to the adoption of the AEDPA and IIRIRA.  Mejia, unlike the petitioner in St. Cyr., entered pleas of guilty after the adoption of the AEDPA on April 24, 1996.  This distinction is critical, as more fully explained below, in that Mejia's ineligibility for Section 212(c) relief is not predicated upon the provision of IIRIRA at issue in St. Cyr.

The Department of Justice recently adopted regulations which, in essence, effectuate the St. Cyr decision.  See 8 C.F.R. §§ 1003.44 and 1212.3. The regulations establish procedures under which eligible criminal aliens, denied Section 212(c) relief prior to the St. Cyr decision, may seek Section 212(c) relief.  Under the regulations, eligible aliens could file "special motions" to seek 212(c) relief on or before April 26, 2005.  8 C.F.R. § 1003.44.  Aliens, like Mejia, convicted of an "aggravated felony" after the adoption of AEDPA, on April 24, 1996, are ineligible under the regulations.  See 8 C.F.R. §1003.44(c) and 8 C.F.R. §1212.3(f)(4).  Title 8, Section 1003.44(c) of the Code of Federal Regulations provides that "aggravated felons" (as it is defined post-IIRIRA) are ineligible for relief under 212(c) except as provided in 8 C.F.R. §1212.3(f)(4).  That

_____

For the reasons stated in Section I and II, supra, it is beyond rational dispute that Congress has eliminated habeas jurisdiction.

section provides, in relevant part, that only "aggravated felons" who pled guilty before the enactment of AEDPA on April 24, 1996, remain eligible.[15]

C    Congress Expressed A Clear Intent That "Aggravated Felons," As Defined In The IIRIRA, Convicted After The Adoption Of The AEDPA In April 1996, Were Ineligible For Section 212(c) Relief

By way of this Petition, Mejia contends that the regulations run afoul of the Supreme Court's decision in St. Cyr as they have the impermissible[16] retroactive effect of denying him relief under Section 212(c).[17] See Petition, ¶18. Because the regulations properly implement clear congressional intent as expressed in AEDPA and IIRIRA, the claim fails.

As noted above, in INS v. St. Cyr, the Supreme Court considered whether the repeal of Section 212(c) relief in IIRIRA Section 304 evinced congressional intent that the repeal provision be retroactively applied to aliens who had pled guilty prior to both

---

[15]    These regulations were adopted after full notice and comment and this exact issue was thoroughly reviewed by the agency. See 69 F.R. 57826. The agency's interpretation of these statutes is entitled to deference from this Court. Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984).

[16]    "Impermissibly retroactive" is routinely misunderstood in this context. It clearly does not signify that Congress cannot pass retroactive legislation. It is dogmatic that Congress may do so. See Landgraf v. USI Film Products, 511 U.S. 244, 266 (1994); St Cyr, 533 U.S. at 325 n. 55. Where Congress has not spoken clearly as to the temporal effect of a statute, it is presumed *not* to have intended retroactive effect, and thus (upon finding congressional intent to be unclear), a court must determine if the action taken constitutes an "impermissibly retroactive" application *in contravention of that presumed congressional intent*. Such analysis (and terminology) is inapposite where Congress has unambiguously expressed its intent as to the temporal reach of a statute. Landgraf, 511 U.S. at 280.

[17]    The constitutinal limitations on "retroactive" civil legislation are more fully discussed in Section V, infra.

IIRIRA and AEDPA. IIRIRA's repeal of Section 212(c) lacked any evidence that Congress intended any retroactive application. Thus, there is no dispute that Section 212(c) remained in effect at the time of Mejia's plea.

In St. Cyr, the petitioner pled guilty before the enactment of the AEDPA at a time when he was eligible for Section 212(c) relief. Although the AEDPA would eliminate Section 212(c) relief for "aggravated felons" in April 1996, that provision of the AEDPA was not made retroactive and so the petitioner in St. Cyr remained eligible for Section 212(c) relief. Subsequently, Congress repealed Section 212(c) relief altogether in IIRIRA. The government argued in St. Cyr that IIRIRA's repeal should be retroactively applied to the petitioner in St. Cyr, a position the court rejected for the reasons noted above.

Unlike the Petitioner in St. Cyr, who pled guilty prior to both AEDPA and IIRIRA, Mejia pled guilty after the effective date of the AEDPA. The provisions of the AEDPA, which could not be retroactively applied to the petitioner in St. Cyr, apply prospectively to Mejia. Specifically, section 440(d) of the AEDPA rendered aliens convicted of "aggravated felonies" after April 24, 1996, ineligible for Section 212(c) relief. See AEDPA Section 440(d).[18] Congress intended that Section 440(d) apply prospectively. See, e.g., Goncalves v. Reno, 144 F.3d 110, 133 (1st Cir.1998). When Mejia pled guilty on May 26, 1996, there existed a valid statute prohibiting "aggravated felons" from

---

[18] See also, e.g., Cordes v. Gonzales, --- F.3d. ---, 2005 WL 1876322 (9th Cir. 2005) ("On April 24, 1996, one month before Cordes's conviction, Congress passed section 440(d) of AEDPA, which made all persons designated as aggravated felons ineligible for section 212(c) relief.").

seeking such relief.  AEDPA Section 440(d).  To be sure, the definition of "aggravated felony" in effect in May 1996, did not include the offenses for which he was convicted (prior to the IIRIRA a five year sentence was required).  Standing alone, this provision would not operate to deprive Mejia of Section 212(c) relief.  But, as Mejia himself notes in his Petition, any reasonably competent attorney should have advised . . . that Congress has the power to, and has in the past, enacted legislation retroactively making crimes deportable offenses."  Petition, ¶17.

In September of 1996, Section 321(a)(3) of the IIRIRA, reduced the sentencing requirement for a crime of violence to qualify as an "aggravated felony" from "at least 5 years" to "at least one year."  See AEDPA §321(a).  Mejia, sentenced to two years, qualifies as an "aggravated felon" under the new definition.  In adopting IIRIRA Congress further expressly provided that the enlarged definition of aggravated felony applied with respect to "conviction[s] . . . entered before, on, or after . . ." the enactment of IIRIRA[19] and was to be applied "to actions [removals] taken on or after the date of the enactment of this Act, regardless of when the conviction occurred . . ." See IIRIRA § 321(b) and (c). Mejia falls within this provision as he was convicted "before. . ." the effective date of IIRIRA and placed into removal proceedings "after" its enactment.

It is thus irrelevant that Mejia was not an aggravated felon at the time he pled guilty.  Congress indisputably expressed a clear intent that the expanded definition of

---

[19]  IIRIRA was enacted September 30, 1996.  See St. Cyr., 533 U.S. at 292.

"aggravated felon" apply to all convictions entered before, on or after the adoption of IIRIRA, in all actions [removals], undertaken after September 30, 1996. See IIRIRA §321(b) and (c).[20] By providing that its definition of "aggravated felon" was to be applied "to actions taken on or after the date of the enactment of this Act, regardless of when the conviction occurred," IIRIRA rendered Mejia ineligible for Section 212(c) relief under Section 440(d) of the AEDPA which applied prospectively to Mejia and provided that "aggravated felons" convicted on or after April 24, 1996, were ineligible for Section 212(c) relief. See IIRIRA § 321(b); AEDPA §440(d).[21] What makes Mejia ineligible is the retroactive application of IIRIRA's expanded definition of "aggravated felony," not IIRIRA's repeal of Section 212(c) (at issue in St. Cyr). IIRIRA's change in the definition of aggravated felony is clearly intended to be retroactive, and is permissibly so.

Where Congress has clearly and unmistakably spoken as to the temporal effect of a statute, it must be given effect and this Court's inquiry ends. Landsgraf, 511 U.S. at 280 ("the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. *If Congress has done so, of course, there is no need to resort to judicial default rules.* [It is only when] the statute contains no such express command, [that] the court must determine whether the new statute would have retroactive effect.")

---

[20] ADEPA eliminated 212(c) relief for "aggravated felons" convicted on or after its effective date April 24, 1996. Thus, the petitioner in St. Cyr, who pled guilty prior to the adoption of AEDPA appropriately remains eligible for 212(c) relief as his conviction fell outside of that statute's prospective application.

[21] In the IIRIRA, Congress substituted a process called "cancellation of removal" for which aggravated felons are ineligible. See 8 U.S.C. § 1229b(a)(3).

(emphasis added).[22]  See also, Lattab v. Ashcroft, 384 F.3d 8, 14 (1st Cir. 2004) ("If this perscrutation [analysis of congressional intent] leads to a firm conviction that Congress intended the statute to have a specific temporal reach, the retroactivity analysis ends and we will apply the statute in accordance with Congress's prescription.").

It is well-settled that Sections 321(b) and (c) of the IIRIRA evince unmistakable Congressional intent that the expanded definition of "aggravated felon" apply retroactively.  See St. Cyr, 533 U.S. at 319 ("IIRIRA's amendment of the definition of 'aggravated felony,' for example, clearly states that it applies with respect to 'conviction[s] . . . entered before, on, or after' the statute's enactment date."); see also, e.g., Mohammed v. Ashcroft, 261 F.3d 1244, 1250 (11th Cir. 2001) (upholding retroactive application of aggravated felon definition); Flores-Leon v. I.N.S., 272 F.3d 433, 439 (7th Cir. 2001)(same); Sousa v. INS, 226 F.3d 28, 33-34 (1st Cir. 2000)(same); and Aragon-Ayon v. INS, 206 F.3d 847, 853 (9th Cir. 2000) (same).

Every Circuit Court to have considered the issue now before this court has come to the conclusion that aliens who pled guilty after AEDPA, to crimes that meet the expanded definition of "aggravated felonies" under IIRIRA, are ineligible for Section 212(c) relief.

Most recently, the Ninth Circuit upheld the removal of an alien who, like Mejia, pled guilty after the adoption of the ADEPA but before the enactment of the IIRIRA, stating:

---

[22]  It is similarly irrelevant that Mejia may have relied upon the possibility of relief from removal.  If Congress clearly stated its intent to strip Mejia (and aliens like him) of relief under Section 212(c), it is within Congress' power to do so, and this Court must give effect to the provision.  Landgraf, 511 U.S. at 267 ("the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope").

> [W]e reject Alvarez-Barajas' argument that § 321 of the IIRIRA, which expanded the aggravated felony definition, cannot be applied retroactively to him because the Supreme Court has indicated otherwise in St. Cyr, 533 U.S. at 318-19. In holding that Congress did not clearly intend for a *different section of the IIRIRA* to apply retroactively, the Court contrasted this section with § 321(b), which the Court found unambiguously applied retroactively. Id.
>
> . . . .
>
> Because, with respect to this section of the IIRIRA [expanding the definition of "aggravated felony'], Congress has satisfied the "demanding" standard for making a law unambiguously retroactive, there can be no doubt that the expanded aggravated felony definition can be applied retroactively to Alvarez-Barajas. St. Cyr, 533 U.S. at 316.

Alvraez-Barajas v. Gonzales, --- F.3d ---, 2005 WL 1906672, *3 (9th Cir. 2005) (emphasis added). See also, Cordes v. Gonzales, --- F.3d ---, 2005 WL 186322 (9th Cir. 2005) (alien convicted after AEDPA but before IIRIRA of an "aggravated felony" as later defined in IIRIRA appropriately found ineligible for 212(c) relief); Garcia Echevarria v. United States, 376 F.3d 507, 515-516 (6th Cir. 2004) (same); Khan v. Ashcroft, 352 F.3d 521 (2nd Cir. 2003) (same); United States v. Velasco Medina, 305 F.3d 839, 849 (9th Cir. 2002) (same); and Mohammed v. Ashcroft, 261 F.3d 1244, 1250 (11th Cir. 2001) (same).

### C.   THE RETROACTIVE EFFECT OF IIRIRA'S EXPANDED DEFINITION OF "AGGRAVATED FELONY" DOES NOT RUN AFOUL OF CONSTITUTIONAL LIMITATIONS ON CIVIL LEGISLATION

The denial of 212(c) relief, even if retroactive, is not unconstitutional. "The Legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration." Landgraf v. USI Film Products, 511 U.S. 244, 266 (1994). St. Cyr makes eminently clear that Congress may retroactively strip aliens of the right to relief under Section 212(c) provided that its legislation evinces a clear intent to do

so.  See St Cyr, 533 U.S. at 325 n. 55 ("our decision today is fully consistent with a recognition of Congress' power to act retrospectively. We simply assert, as we have consistently done in the past, that in legislating retroactively, Congress must make its intention plain.").

The Supreme Court has identified the constitutional limitations on retroactive legislation.  See Landgraf, 511 U.S. at 266-267 (the ex post facto clause; Article I, § 10, cl. 1; the fifth amendment takings clause; the prohibitions on "Bills of Attainder" in Art. I, §§ 9-10; and the due process clause).  Clearly, neither the ex post facto clause,[23] Article I, § 10, cl. 1 (prohibiting states from impairing the obligation of contracts), nor the takings clause of the Fifth Amendment is at issue in this matter.  Thus, the remaining issue is whether the legislation can be construed as a "bill of attainder" or deemed to violate due process.

As an initial matter, no serious claim exists that the law constitutes a "bill of attainder."[24]  A "bill of attainder" is a law "that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial."  Nixon v. Administrator of General Services, et al, 433 U.S. 425, 468-469

---

[23]  Galvan v. Press, 347 U.S. 522, 531 (1954) ("And whatever might have been said at an earlier date for applying the ex post facto Clause, it has been the unbroken rule of this Court that it has no application to deportation.").

[24]  "The bill of attainder, a parliamentary act sentencing to death one or more specific persons, was a device often resorted to in sixteenth, seventeenth and eighteenth century England for dealing with persons who had attempted, or threatened to attempt, to overthrow the government." Brown, 381 U.S at 441.

(1977).  Congress does not by way of this provision decide a particular person is subject to punishment.  The provision at issue sets out rules to be implemented by immigration judges whose decisions are subject to review by Article III courts.   Contrast, United States v. Brown, 381 U.S. 437, 449-350  (1965).   Moreover, deportation of non-citizens from the United States is simply not punishment. Mahler v. Eby, 264 U.S. 32, 39  (1923) ("It is well settled that deportation, while it may be burdensome and severe for the alien, is not a punishment"); United States v. Bodre, 948 F.2d 28, 32 (1st Cir. 1991) (same).

The Fifth Amendment due process requirement prohibits the government from depriving an individual of life, liberty, or property in an unfair manner.  See Matthews v. Eldridge, 424 U.S. 319, 355 (1976).  To survive scrutiny, however, an immigration law need only have some rational basis for its passage, see Fiallo v. Bell, 430 U.S. 787, 794-795  (1977), and its retroactive application:

> Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches
> . . . .
> To be sure, . . . retroactive legislation does have to meet a burden not faced by legislation that has only future effects
> . . . .
> But that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.

Pension Benefit Guaranty Corporation v. R.A. Gray & Co., 467 U.S. 717, 729-730 (1984).[25]  "Congress has a legitimate interest in protecting society from the

---

[25] To the extent this Court may seek to analyze whether such a result is retroactively "harsh or oppressive," in violation of the due process clause, the test is no different from the rational basis test applied to immigration statutes generally.  See United States v.

commission of aggravated felonies . . ., and legislation that deports aliens who presently commit or who have committed those acts in the past is a rational means of furthering that interest." Kuhali v. Reno, 266 F.3d 93, 111 (2nd Cir. 2001) (citing Hamama v. INS, 78 F.3d 233, 236 (6th Cir. 1996)). Such a justification serves both as a rational basis for the statute and for its retroactive application. See also, Cordes v. Gonzales, --- F.3d. ---, 2005 WL 1876322, *4 (9th Cir. 2005) (retroactive application of the "aggravated felon" definition does not violate due process).

Further, to state a due process claim, aliens must in the first instance possess a liberty or property interest. See Bd. of Regents v. Roth, 408 U.S. 564, 569-71 (1972). As relief under section 212(c) is purely discretionary,[26] there can be no due process right to obtain such relief.[27] A constitutionally protected interest cannot arise from relief that the Executive exercises unfettered discretion

---

Carlton, 512 U.S. 26, 30 (1994) (in a case involving retroactive tax legislation, the Supreme Court noted that the "harsh and oppressive" restriction was no different from "the prohibition against arbitrary and irrational legislation that applies generally in the economic sphere."); Gray, 467 U.S. 733 ("And, although we have noted that retrospective civil legislation may offend due process if it is particularly 'harsh and oppressive,' that standard does not differ from the prohibition against arbitrary and irrational legislation that we clearly enunciated in Turner Elkhorn.") (citations and quotations omitted).

[26] The Supreme Court has "described the Attorney General's suspension of deportation under a . . . provision of the INA as 'an act of grace' which is accorded pursuant to her 'unfettered discretion.'" INS v. Yueh-Shaio Yang, 519 U.S. 26, 30, (1996).

[27] No court has jurisdiction to review the exercise of discretion. See 8 U.S.C. § 1252(a)(2).

to award.  <u>Connecticut Bd. of Pardons v. Dumschat</u>, 452 U.S. 458, 465, (1981);[28]

<u>United States v. Lopez-Ortiz</u>, 313 F.3d 225, 231 (5th Cir. 2002) (an alien does not

have a constitutionally protected interest in receiving discretionary relief from

removal or deportation); <u>Smith v. Ashcroft</u>, 295 F.3d 425, 430 (4th Cir. 2002)

(same); <u>Mohammed v. Ashcroft</u>, 261 F.3d 1244, 1250 (11th Cir. 2001) (same);

<u>Escudero-Corona v. INS</u>, 244 F.3d 608, 615 (8th Cir. 2001)  (same); <u>Huicochea-

Gomez v. INS</u>, 237 F.3d 696, 700 (6th Cir. 2001) (same); <u>see</u> <u>also</u>, <u>Fernandes

Pereira v. Gonzales</u>, --- F.3d ---, 2005 WL 1692877, *6 (1st Cir. 2005) ("Congress

is not required to provide aggravated felons with an avenue for discretionary relief

from deportation, and currently does not do so."); <u>Seale v. INS</u>, 323 F.3d 150, 159-

160 (1st Cir. 2003) (retroactive application of expanded aggravated felony

definition to render an alien removable does not violate the constitution).[29]

---

[28]  In <u>Dumschat</u>, the Supreme Court held that a state inmate does not enjoy a constitutionally protected liberty interest in having his or her sentence commuted, even where the state "consistently" commuted the sentences of inmates in "most" cases. <u>Dumschat</u>, 452 U.S. at 464-65.  "[A] constitutional entitlement cannot be created--as if by estoppel--merely because a wholly and expressly discretionary state privilege has been granted generously in the past." <u>Id.</u>  (citations and quotations omitted).

[29]  Cases finding that *eligible* aliens have a due process right to have a Section 212(c) petition *adjudicated* do not stand for the proposition that there is an underlying constitutional right to Section 212(c) relief, itself.  <u>See</u>, <u>e.g.</u>, <u>Arevalo v. Ashcroft</u>, 344 F.3d 1, 15 (1st Cir. 2003)(the "right to seek relief is analytically separate and distinct from a right to the relief itself. Consequently, an alien is not precluded from having a vested right in a form of relief merely because the relief itself is ultimately at the discretion of the Executive Branch.") (citations omitted).  Stated another way, eligible aliens have a right to have statutorily authorized petitions adjudicated.  St Cyr found such as a matter of statutory interpretation, not as a matter of constitutional interpretation.  There is no constitutional right that such a statute exist.

## Conclusion

For the reasons stated herein, Mejia's habeas petition should be dismissed for lack of subject matter jurisdiction and, while the issue is beyond this Court's jurisdiction, fails to state a claim upon which relief may be granted.

<div style="margin-left: 40%;">

Respectfully Submitted,

MICHAEL J. SULLIVAN
United States Attorney

 /s/ Mark J. Grady
MARK J. GRADY
Assistant U.S. Attorney
U.S. Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA   02210
Tel. No. (617) 748-3136

</div>

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Omar Trochez Mejia  05 - 11378 PBS
A 30-342-556             )
         Petitioner,    )
                 )
    - against -       )
                 )
Bruce Chadbourne        )
District Director, United States Immigration )
and Customs Enforcement, Department of )
Homeland Security        )
         Respondent.   )
                 )

RECEIPT #
AMOUNT $
SUMMONS ISSUED N/A
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 6/29/05

MAGISTRATE JUDGE Sorokin

Jeffrey B. Rubin
The Law Offices of Jeffrey B. Rubin
One Center Plaza, Suite 203
Boston, MA  02108

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND PETITION FOR WRIT OF HABEAS CORPUS

This is an action brought pursuant to 28 USC §1331, 28 USC §2241, 5 USC §551 *et seq.*, 28 USC §§2201 *et seq.* , and the All Writs Act, 28 USC §1651 for declaratory and injunctive relief, to protect Petitioner's rights under the Due Process Clause of the Fifth Amendment to the Constitution and applicable federal law, and to issue a writ of habeas corpus, and enjoin Petitioner's detention and removal from the United States. In support of this petition, Petitioner states as follows:

### JURISDICTION AND VENUE

1.     This action arises under the Constitution, the Immigration & Nationality Act of 1952, as amended (INA), 8 USC §1101 *et seq.*, and the Administrative Procedure Act (APA), 5 USC §701 *et seq.* This Court has habeas jurisdiction pursuant to 28 USC §2241, Art. 1, §9, Cl. 2 of the United States Constitution (the "Suspension Clause"); and the common law. This Court may also exercise jurisdiction pursuant to 28 USC§1331 and may grant relief pursuant to the Declaratory Judgment Act, 28 USC§2201 *et seq.*, and the All Writs Act, 28 USC §1651.

The REAL ID Act of 2005 purports to eliminate habeas corpus review of final orders of removal, deportation or exclusion. See REAL ID Act, P. L. 109-13, 119 Stat. 231 (May 11, 2005).  However, under the U.S. Constitution, "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U. S. 507 (2004), citing the U. S. Const., Art. I, §9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.").

2.    Venue lies in the United States District Court for the District of Massachusetts where the Petitioner has been detained and from where the Immigration & Naturalization Service (INS) will execute the final order of deportation.

## PARTIES

3.    Petitioner is a native and citizen of Honduras who has been a lawful permanent resident of the United States since May 27, 1973.

4.    Respondent, Bruce Chadbourne, is the District Director of Immigration and Customs Enforcement (ICE) department of the Department of Homeland Security (DHS) for the Massachusetts District, which includes jurisdiction over the immigration detention facility within the Suffolk County House of Corrections, South Bay. As such, he is charged with the duty of administration and enforcement of all the functions, powers and duties of the Immigration and Customs Enforcement department of the Department of Homeland Security.

## EXHAUSTION OF REMEDIES

5.    Petitioner has exhausted his administrative remedies to the extent required by law, and his only remedy is by way of this judicial action. At the time of Petitioner's removal hearing on May 18, 1998 and on the date of his final order of removal, May 9, 2001, there was no apparent relief available to Petitioner, as the Supreme Court of the United States did not decide St. Cyr until June 25, 2001. INS v. St. Cyr, 121 S. Ct. 2271 (2001).

6.    In the alternative, Petitioner argues that he is not required to exhaust his administrative remedies in order to bring a claim in habeas. See St. Cyr, 533 U.S. at 311-12 (2001); Jankowski v. INS, 138 F. Supp. 2d 269, 273-76 (D. Conn 2001), rev'd on other grounds 291 F.3d 172 (2nd Cir. 2002).

## STATEMENT OF FACTS

7.    Petitioner was admitted to the United States as a lawful permanent resident on May 27, 1973. He came to this country at the age of 18 and is now 50 years old. His birth country is a foreign country to him in all ways. Petitioner has four US citizen children, and the mother of those children, with whom he has lived for 24 years, is a legal permanent resident. Petitioner has several brothers and sisters in the United States, all legal permanent residents or U.S. citizens.

8.    Until he was seriously injured in a motor vehicle accident in 1992, Petitioner was a bus driver for the public transportation system in Massachusetts. Petitioner is a long-time parishioner at Our Lady of Lourdes Catholic church in Jamaica Plain, Massachusetts. Until May of 1996, he had never been convicted of any crime in the United States or any other country.

9.    On May 16, 1996, a criminal complaint was filed against Petitioner on two counts of assault and battery and one count of assault and battery with a dangerous weapon in West Roxbury District Court in Massachusetts. The dates of the offenses charged were March 27, 1996 (A&B), April 20, 1996 (ABDW), and May 14, 1996 (A&B). The Petitioner pled guilty or

admitted to sufficient facts to all three charges on May 29, 1996 and was sentenced to two years in a house of correction, 6 months to serve, the remainder suspended for three years.

10.     Petitioner gained early release due to good behavior in the house of correction, and successfully completed his parole and probation. On April 12, 2001, the Massachusetts Advisory Board of Pardons voted to submit a favorable recommendation for a conditional pardon to the Governor of Massachusetts. That recommendation lapsed and was denied without prejudice with the Governor failed to act upon it. Since his convictions of May 29, 1996, Petitioner has not been indicted for or convicted of any crime in this country or any other.

11.     On March 25, 1998, the Immigration and Nationality Service filed a Notice to Appear with the Immigration Judge (IJ) in Oakdale, Louisiana and charged Petitioner as deportable under INA §241(a)(2)(A)(iii) (aggravated felony). At a Master Calendar Hearing on May 5, 1998, Petitioner conceded deportability and sought withholding of removal. At the merits hearing held on May 18, 1998, Petitioner withdrew his request for withholding and the IJ ordered Petitioner deported. Petitioner timely filed an appeal with the Board of Immigration Appeals (BIA), which appeal was denied on May 9, 2001.

12.     On May 21, 1998, Petitioner was released from federal detention on a bond of $8,000, and returned to his home in Roslindale, Massachusetts. He has never received notice that his bond had been cancelled. Petitioner's home address has not changed since before he was placed in removal proceedings in 1998.

13.     On April 7, 2005, Petitioner hired Attorney Carlos Estrada of Boston, Massachusetts to file a Motion to Reopen with the Board of Immigration Appeals to petition for 212(c) relief. On April 26, 2005, the deadline under 8 C.F.R. 1003.44 for filing a Motion to Reopen requesting 212(c) relief, Attorney Estrada informed Petitioner by telephone that he would not be filing as promised because Attorney Estrada believed that Petitioner was ineligible for that relief under 8 C.F.R. 1003.44. Attorney Estrada memorialized this conversation in his letter of April 27, 2005 to Petitioner. By refusing to file a timely Motion to Reopen as promised, Attorney Estrada denied Petitioner the opportunity to timely argue to the BIA that the regulations were unconstitutional as applied to him.

14.     On June 11, 2005, ICE officers went to Petitioner's home, arrested him and transported him to the ICE Detention and Removal Office in Boston, Massachusetts for initial processing for the execution of the final order of deportation. Petitioner is currently in custody pursuant to INA §241, which mandates his detention without giving him an opportunity to demonstrate that he is not a danger or a flight risk and, therefore, that no purpose is served by his detention. Petitioner is currently being detained at the Suffolk County House of Corrections at South Bay, 20 Bradston Street, Boston, MA 02118.

15.     On June 20, 2005, attorney Kathleen M. Gillespie, an associate attorney at the Law Offices of Jeffrey B. Rubin, One Center Plaza, Suite 230, Boston, MA 02108 filed a Motion to Vacate the conviction underlying the order of removal in West Roxbury District Court, the Massachusetts state court where Petitioner pled guilty. The motion to vacate was based on a procedural defect in the plea colloquy under M.G.L. c. 278, sec. 29D. A hearing on the matter was held on June 24, 2005 before the Honorable Judge Coffey. Judge Coffey took the matter under advisement.

## LEGAL BACKGROUND

16.    On April 24, 1996, Congress passed the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 1001 Stat. 1214 (AEDPA). Section 440(d) of AEDPA amended INA §212(c) to preclude legal permanent residents convicted of certain crimes from seeking waivers in deportation proceedings.

17.    The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRAIRA), P.L. 104-208, 110 Stat. 3009, was enacted September 30, 1996. Certain parts of that legislation became effective immediately; other parts took effect April 1, 1997. IIRAIRA expanded the group of deportable crimes and aggravated felonies. Under the law prior to IIRAIRA, a crime of violence was not an aggravated felony or a deportable offense unless the conviction came with a sentence of five years or more in prison. Therefore, at the time of Respondent's guilty plea on May 29, 1996, he was not pleading to a deportable offense. However, a defendant in Petitioner's situation would still have reasonably relied on the availability of 212(c) relief, since any reasonably competent criminal attorney should have advised such a Respondent that Congress has the power to, and has in the past, enacted legislation retroactively making crimes deportable offenses.

17.    On June 25, 2001, the Supreme Court of the United States held in INS v. St. Cyr that people who had pled guilty to a deportable offense at a time when they may have been eligible for §212(c) relief remain eligible for the §212(c) waiver. INS v. St. Cyr, 121 S. Ct. 2271 (2001). The Court based its decision on a retroactivity analysis, holding that...

18.    The Department of Justice (DOJ)'s final rule on procedures for applying for section 212(c) relief pursuant to the Supreme Court's decision in St. Cyr became effective on October 28, 2004. 8 C.F.R. 1003.44. Because Petitioner plead guilty after April 24, 1996 but before April 1, 1997, and because he has been convicted of what is now defined as an aggravated felony, he is ineligible under the regulation for 212(c) relief under the regulations. Petitioner argues that those regulations are invalid because the case law of this nation, including that of the Supreme Court's holding in St. Cyr, suggests that 212(c) relief should still be available to those who pled guilty before the old 212(c) relief was eliminated on April 1, 1997. See INS v. St. Cyr, 121 S. Ct. 2271 (2001); Maria v. McElroy, 58 F. Supp. 2d 206 (E.D.N.Y. 1999),aff'd, Pottinger v. Reno, 2000 U.S. App. LEXIS 33521 (2d Cir. 2000)(unpublished decision).

19.    Petitioner has been detained after release on bond even though the 90 day removal period required under 8 U.S.C. § 1251 has long since run. Neither Petitioner nor his attorney have been served with papers explaining the legal basis for this detention.

## IRREPARABLE HARM

20.    The Respondent's conduct is depriving Petitioner of his liberty without providing his due process of law. The deprivation of his liberty is, in and of itself, irreparable harm.

## FIRST CLAIM FOR RELIEF
### (Substantive Due Process Violation)

21.    The allegations set forth in paragraphs 1 through 17 above are repeated and

realleged as though fully set forth herein.

22.     As a lawful permanent resident, Petitioner is protected by every clause of the United States Constitution that is not expressly reserved to citizens. This protection includes the Fifth Amendment. 8 C.F.R. 1003.44 as written and as applied to Petitioner violates substantive due process under the Fifth Amendment of the United States Constitution.

## SECOND CLAIM FOR RELIEF
### (Equal Protection Violation)

23.     The allegations set forth in paragraphs 1 through 17 above are repeated and realleged as though fully set forth herein.

24.     As a lawful permanent resident, Petitioner is protected by every clause of the United States Constitution that is not expressly reserved to citizens. This protection includes the Fifth Amendment. 8 C.F.R. 1003.44 violates the equal protection clause of the Fifth Amendment.

## THIRD CLAIM FOR RELIEF
### (Due Process Violation)

25.     The allegations set forth in paragraphs 1 through 17 above are repeated and realleged as though fully set forth herein.

26.     As a lawful permanent resident, Petitioner is protected by every clause of the United States Constitution that is not expressly reserved to citizens. This protection includes the Fifth Amendment. 8 C.F.R. 1003.44 violates the procedural due process clause of the Fifth Amendment.

## FOURTH CLAIM FOR RELIEF
### (Due Process Violation)

27.     The allegations set forth in paragraphs 1 through 17 above are repeated and realleged as though fully set forth herein.

28.     As a lawful permanent resident, Petitioner is protected by every clause of the United States Constitution that is not expressly reserved to citizens. This protection includes the Fifth Amendment. The detention of Petitioner without notice of the grounds of that detention violates the procedural due process clause of the Fifth Amendment.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioner prays that this Honorable Court grant the following relief:

(1)     Grant the writ of habeas corpus;

(2)     Issue an injunction enjoining Respondents from deporting Petitioner;

(3)     Declare that the retroactive application of 8 C.F.R. 1003.44 in Petitioner's case violates the due process clause of the Fifth Amendment;

(4)    Declare that the retroactive application of 8 C.F.R. 1003.44 in Petitioner's case violates
       the equal protection clause of the Fifth Amendment;

(5)    Vacate the order of deportation and remand the case to the Immigration Court for
       consideration of relief under former INA §212(c);

(6)    Award to Petitioner reasonable costs and attorneys' fees; and,

(7)    Grant any other and further relief that this Honorable Court deems just and proper.

Respectfully submitted,

Jeffrey B. Rubin
The Law Offices of Jeffrey B. Rubin
One Center Plaza, Suite 203
Boston, MA  02108

## VERIFICATION

Pursuant to 28 USC §2242, the undersigned certifies under penalty of perjury that he has
reviewed the foregoing petition and that the facts state therein concerning Petitioner are true and
correct.

_Omar Trochez Mejia_
(Petitioner's signature/name)

Date submitted:  6 - 29 - 05

## CERTIFICATE OF SERVICE

I, Jeffrey B. Rubin, do hereby certify that a true and accurate copy of this

Complaint for Declaratory and Injunctive Relief and Petition for Writ of Habeas Corpus

has been delivered via first class mail to:

Bruce Chadbourne
District Director, US Immigration and Customs Enforcement
Department of Homeland Security
JFK Federal Building, Room 1725
15 New Sudbury Street
Boston, MA 02203

Dated this 28th day of June, 2005,

_____
Jeffrey B. Rubin, BBO#640964
Law Offices of Jeffrey B. Rubin, P.C.
One Center Plaza, Suite 230
Boston, MA 02108
(617) 367-0077

IMMIGRATION COURT
1900 E. WHATLEY ROAD
OAKDALE, LA  71463

In the Matter of

TROCHEZ-MEJIA  O.

Respondent

Case : 30 - 342 - 556

IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on :
This memorandum is solely for the convenience of the parties.  If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.

[X] The respondent was ordered removed from the United States to HONDURAS

[ ] Respondent's application for voluntary departure was denied and
    respondent was ordered removed to
    alternative to

[ ] Respondent's application for voluntary departure was granted until
    upon posting a bond in the amount of $ _____
    with an alternate order of removal to

[ ] Respondent's application for asylum was ( )granted ( )denied
    ( )withdrawn.

[ ] Respondent's application for withholding of removal was ( )granted
    ( )denied ( )withdrawn.

[ ] Respondent's application for cancellation of removal under section
    240A(a) was ( )granted ( )denied ( )withdrawn.

[ ] Respondent's application for cancellation of removal was ( ) granted
    under section 240A(b)(1)   ( ) granted under section 240A(b)(2)
    ( ) denied ( ) withdrawn.  If granted, it was ordered that the
    respondent be issued all appropriate documents necessary to give
    effect to this order.

[ ] Respondent's application for a waiver under section _____ of the INA was
    ( )granted ( )denied ( )withdrawn or ( )other.

[ ] Respondent's application for adjustment of status under section _____
    of the INA was ( )granted ( )denied ( )withdrawn.  If granted, it
    was ordered that respondent be issued all appropriate documents necessary
    to give effect to this order.

[ ] Respondent's status was rescinded under section 246.

[ ] Respondent is admitted to the United States as a _____ until _____.

[ ] As a condition of admission, respondent is to post a $ _____ bond.

[ ] Respondent knowingly filed a frivolous asylum application after proper
    notice.

[ ] Respondent was advised of the limitation on discretionary relief for
    failure to appear as ordered in the Immigration Judge's oral decision.

[ ] Proceedings were terminated.

[ ] Other: _____.

Date:
Appeal:    Appeal Due By: 6-17-98

JOHN A. DUCK, JR.
Immigration Judge

BG

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of Board of Immigration Appeals

Falls Church, Virginia 22041

---

File: A30 342 556 - Oakdale

Date:

**MAY - 9 2001**

In re: OMAR TROCHEZ-MEJIA

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Stephen A. Lagana, Esquire

ON BEHALF OF SERVICE: Richard J. Averwater
                       Assistant District Counsel

CHARGE:

    Notice: Sec.   237(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1227(a)(2)(A)(iii)] -
                    Convicted of aggravated felony

APPLICATION: Waiver of inadmissibility

ORDER:

    PER CURIAM. The respondent appeals the decision of an Immigration Judge dated May 18, 1998, finding the respondent removable as charged and finding him ineligible for any form of relief. The respondent's appeal will be dismissed.

    The Immigration and Naturalization Service introduced evidence of the respondent's conviction on May 29, 1996, in the West Roxbury District Court in West Roxbury, Massachusetts, for the offense of Assault and Battery by Means of a Dangerous Weapon for which he was sentenced to a term of imprisonment of 2 years. The respondent's removability under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii), was properly established.

    At the hearing held on May 18, 1998, the respondent withdrew all applications for relief. On appeal, the respondent states only that he was impermissibly denied section 212(c) relief due to retroactive application of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546. Neither of these Acts were applied retroactively to the respondent as he was placed in removal proceedings after the enactment of both of these acts, and further, the respondent's conviction occurred after the enactment date of AEDPA.

A30 342 556

The respondent asks this Board to assist him, noting that he is from Honduras. As the respondent is not eligible for any form of relief, this Board does not have the authority to exercise discretion on his behalf. While citizens of Honduras have been designated for protection under the Temporary Protected Status program, the respondent is not eligible as he has committed a felony. *See* 8 C.F.R. § 244.4; 65 Fed. Reg. 112, 36719 (2000).   The respondent's appeal is dismissed.


FOR THE BOARD